UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TAMIE M.,[1]

                              Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

DECISION & ORDER

20-CV-0926MWP

**PRELIMINARY STATEMENT**

Plaintiff Tamie M. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 23).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 18, 21). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 12, 2013, the alleged onset date. (Tr. 22).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of "status post July 2016 left knee arthroscopy with ACL reconstruction, degenerative disc disease of the cervical and lumbar spine, history of deep vein thrombosis, fibromyalgia, and chronic pain syndrome." (*Id.*). The ALJ concluded that plaintiff also suffered from other impairments that were not severe. (Tr. 22-24). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 24-25).

The ALJ concluded that plaintiff retained the RFC to perform sedentary work with certain limitations. (Tr. 25). Specifically, plaintiff was limited to lifting/carrying ten pounds occasionally and less than ten pounds frequently, sitting six hours out of an eight-hour workday, and standing/walking two hours out of an eight-hour workday. (*Id.*). Plaintiff could frequently reach but was limited to occasional climbing, balancing, stooping, kneeling,

---

[2] The administrative transcript (Docket # 15) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

crouching, and crawling. (*Id.*). Plaintiff was to avoid exposure to vibration but was able to occasionally operate motor vehicles and work at unprotected heights and around moving mechanical parts. (*Id.*).

At steps four and five, the ALJ found that plaintiff was unable to perform her past relevant work but that other jobs existed in the national economy that plaintiff could perform, including the positions of charge account clerk, order clerk, and small parts sorter. (Tr. 28-30). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 30).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 18-1). Plaintiff argues that the ALJ improperly relied on the stale opinions of state consultative examiner Samuel Balderman ("Balderman"), MD, and state non-examining consultative physician I. Seok ("Seok"), MD, in reaching the physical portion of the RFC determination, resulting in an RFC based upon the ALJ's own lay interpretation of the medical record. (*Id.* at 11-15).[3]

### IV.     Analysis

Plaintiff maintains that Balderman's July 31, 2017 and Seok's August 11, 2017 consultative opinions – both of which the ALJ found to be persuasive (Tr. 28, 104-15, 677-81) – were stale in view of subsequent developments in plaintiff's medical record, thus divesting the ALJ of an up-to-date medical assessment of plaintiff's functional limitations. (Docket # 18-1 at

---

[3] Plaintiff's challenges relate to her physical impairments, and plaintiff does not challenge any portion of the ALJ's determination relating to her mental limitations. Therefore, the Court will limit its analysis and discussion of the relevant medical evidence to plaintiff's physical impairments.

11-15). According to plaintiff, her back impairments, particularly those in her cervical spine, significantly deteriorated subsequent to these opinions. (*Id.* at 13). Plaintiff contends that the ALJ, despite acknowledging that subsequent deterioration, nonetheless improperly formulated her RFC without the benefit of a more current opinion. (*Id.* at 13-15).

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, 2018 WL 6715361, *5 (W.D.N.Y. 2018)); *Caswell v. Berryhill*, 2018 WL 4404578, *4 (W.D.N.Y. 2018) ("a stale medical opinion . . . is not substantial evidence to support an ALJ's finding"). An opinion "may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Whitsett v. Berryhill*, 2019 WL 156261 at *4 (quotations omitted). "In other words, [while] the mere passage of time does not render an opinion stale[,] . . . significant developments in an individual's medical history after the examination might." *Vazquez v. Saul*, 2019 WL 3859031, *3 (W.D.N.Y. 2019) (citations and quotations omitted).

When plaintiff applied for SSI/DIB, she reported that she suffered from several medical conditions, including degenerative disc disease, herniated and bulging discs in her cervical and lumbar spine, ACL and meniscus surgery on her left knee, major depression, anxiety/panic attacks, dizziness/lightheadedness, numbness in her extremities, swelling in her legs, memory issues, high blood pressure, and osteoarthritis. (Tr. 240). At the time of Balderman's July 31, 2017 internal medical examination, plaintiff reported a history of lumbar spine pain, knee pain, leg pain, hypertension, and dizziness. (Tr. 677). Regarding her lumbar back pain, plaintiff reported that she had experienced pain for the previous eleven years and that

medications had not alleviated the pain.  (*Id.*).  She also complained of pain in her left knee, dizziness, and intermittent numbness.  (*Id.*).

Upon physical examination, plaintiff was in no acute distress, had normal gait and stance, was able to complete heel and toe walking and rise from a chair without difficulty, used no assistive devices, and needed no help changing for the examination or getting on and off the exam table.  (Tr. 678).  She was able to squat only 40% due to low back pain.  (*Id.*).  Plaintiff's cervical spine showed full flexion, extension, and rotary movement, and her lumbar spine showed limited flexion to 80 degrees with good lateral and rotary movements.  (Tr. 679).  Balderman reported that plaintiff had intact hand and finger dexterity and full grip strength bilaterally.  (*Id.*).  He reviewed imaging of plaintiff's lumbar spine that demonstrated straightening.  (*Id.*).

Balderman assessed diagnoses of status post left knee surgery, obesity, and marijuana use, active.  (*Id.*).  Balderman opined that plaintiff had "mild limitations in bending [and] . . . climbing."  (*Id.*).

Seok reviewed Balderman's evaluation, as well as plaintiff's medical records, including imaging of her left knee.  (Tr. 109).  Seok opined that plaintiff was capable of standing and/or walking for approximately six hours of an eight-hour workday, sitting for approximately six hours of an eight-hour workday, and could lift fifty pounds occasionally and twenty-five pounds frequently.  (Tr. 112).  Seok also concluded that plaintiff was unlimited in her ability to balance, kneel, crawl, and push or pull, but could only frequently climb, stoop, and crouch.  (Tr. 112-13).

The ALJ noted the limitations assessed by Seok and Balderman, which were the only two medical opinions in the record assessing plaintiff's physical capabilities.  He found

them to be persuasive in view of the physicians' expertise and the relative consistency of the opined limitations with one other and with the overall evidence. (Tr. 27-28). The ALJ also found that plaintiff's testimony and subsequent medical evidence "show[ed] a progression of her cervical and lumbar disc disease" that warranted the assessment of greater limitations than those opined by the physicians. (Tr. 28).

The medical records demonstrate that plaintiff suffered from impairments in her cervical spine well before Balderman and Seok rendered their opinions. For instance, cervical spine imaging from 2012 documented "C5-6 and C6-7 relative central stenosis from encroachment by central disc protrusions that have subtle effect on the cord's ventral margin" and "reversal of normal cervical lordosis." (Tr. 596-97). Plaintiff's treating neurosurgeon, John G. Fahrbach IV, MD, diagnosed plaintiff with cervical spondylosis without myelopathy, but noted that she did not have significant neurological compromise. (Tr. 598). He determined that she was not a candidate for surgery and recommended continued conservative treatment, including physical therapy and pain management, such as an epidural injection. (*Id.*). Despite the medical evidence documenting plaintiff's cervical issues, neither Seok's nor Balderman's opinions appear to assess limitations relating to plaintiff's cervical impairment. Indeed, although plaintiff listed her cervical impairment when applying for SSI/DIB, Balderman's opinion does not mention the impairment, nor does it appear that he or Seok reviewed any imaging of plaintiff's cervical spine.

Medical records suggest that plaintiff's cervical impairment was exacerbated by a fall in 2017, causing reinjury to her left knee. (Tr. 604). Fahrbach's treatment notes suggest that plaintiff's "compensatory mechanisms of positioning" as a result of her knee injury exacerbated her neck and back impairments. (Tr. 605). He recommended further imaging and aquatic

physical therapy. (*Id.*). MRIs of plaintiff's cervical spine, taken a few days before Balderman's examination of plaintiff, demonstrated an "increasing moderate to large central C5-6 disc herniation[,] additional moderate right lateral foraminal C5-6 disc herniation[,] [and] unchanged moderate broad-based C6-7 disc herniation with central predominance." (Tr. 675).

On August 1, 2017, plaintiff attended an appointment with Fahrbach complaining of pain radiating from her neck to her shoulders that caused numbness and tingling down her arms. (Tr. 841-42). She also complained of lumbar pain radiating to her sides into her hip and right leg with accompanying numbness and tingling. (*Id.*). Upon examination she demonstrated a slightly antalgic gait, with full strength in her extremities, and slightly decreased range of motion in her cervical and lumbar spine. (*Id.*). According to Fahrbach, the imaging of plaintiff's cervical spine demonstrated a two-level disc herniation in her cervical spine, but no impingement of the spinal cord or significant foraminal stenosis. (*Id.*). Fahrbach recommended exhausting conservative options prior to surgery and advised plaintiff to attempt physical therapy again and to try cervical interlaminar injections. (*Id.*).

Plaintiff returned to Fahrbach in November 2018 complaining of continued cervical pain despite exhausting conservative treatment options, including pain management through interlaminar injections. (Tr. 851-53). Upon examination, plaintiff demonstrated normal gait and the ability to rise from a seated position and to complete tandem walking without difficulty. (*Id.*). She had full cervical range of motion and full strength in her upper extremities. (*Id.*). Fahrbach ordered additional imaging that demonstrated that her cervical disc protrusion at C5-6 had "progressed" with "a loss of lordosis[,] . . . impression on the thecal sac with impingement on the anterior aspect of the spinal cord[,] . . . [and] extension into the left neural foramen with impingement on the exiting C6 nerve root." (Tr. 856). The imaging further

9

demonstrated progression of the disc herniation at C6-7 "with impingement on the thecal sac with some displacement of the spinal cord posteriorly." (*Id.*). At that time, Fahrbach recommended cervical spine surgery, although the surgery was not performed because plaintiff failed to obtain pre-operative clearance due to other medical impairments. (Tr. 856, 891).

Treatment notes and plaintiff's testimony suggest that her cervical impairment continued to cause pain in her neck and shoulders, migraines, and numbness and tingling in her arms. (Tr. 47, 851). According to plaintiff, she frequently dropped objects and had difficulty nodding or turning her head and reaching overhead. (Tr. 53-54, 61-62, 851). She also testified that her spine impairments required her to shift positions frequently between sitting, standing, and lying down. (Tr. 48-49, 52, 59-60).

As this overview demonstrates, following the evaluations conducted by Seok and Balderman, plaintiff's cervical impairment continued to deteriorate despite the exhaustion of conservative treatment modalities, culminating in a recommendation for surgical intervention. These significant developments call into question the reliability and probative value of Seok's and Balderman's evaluations of plaintiff's impairments, which, despite containing postural limitations, contain no limitations for standing, walking, or sitting, reaching, or handling or manipulating objects or controls. On this record, I find that Seok's and Balderman's opinions are stale and that remand is required for the ALJ to obtain a more current medical assessment of plaintiff's functional capacity related to plaintiff's cervical impairment. *See*, *e.g.*, *Vazquez v. Saul*, 2019 WL 3859031 at *3-4 (remanding due to the ALJ's reliance on a consultative examiner's stale medical opinion; "the opinion [from the consultative examiner] is clearly stale with regard to [claimant's] bilateral carpal tunnel syndrome [that was diagnosed more than two years after opinion was rendered][;] . . . [consultative examiner] did not opine about any

limitations in [claimant's] hand dexterity; instead, [consultative examiner] found '5/5' grip strength[;] . . . there was a significant deterioration in [claimant's] condition after [consultative examiner's] exam[,] [a]nd [nurse's] diagnosis and referral for treatment of carpal tunnel syndrome renders [consultative examiner's] opinion stale regarding possible limitations due to that ailment"); *Irby v. Comm'r of Soc. Sec.*, 2019 WL 6696778, *7-8 (W.D.N.Y. 2019) (finding that ALJ erroneously relied on stale opinions regarding claimant's hand functioning; "[consultative examiner's] evaluation was clearly stale with respect to the functioning of both hands: it was completed immediately after [claimant's] first surgery – so close that she could not evaluate [claimant's] right hand – and before [claimant's] left-hand surgery even took place"); *Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, *5 (W.D.N.Y. 2017) ("[a] stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding").

    I find unpersuasive the Commissioner's argument that the RFC was substantially supported because the ALJ "observed that [p]laintiff's cervical and lumbar impairment had progressed over time and therefore he limited [p]laintiff to sedentary work with manipulative and postural limitations, even though the opinions of Drs. Balderman and Seok would have supported a significantly less restrictive RFC."  (Docket # 21-1 at 13).  In short, although the ALJ included restrictions in the RFC purportedly aimed at accommodating any functional limitations associated with the deterioration in plaintiff's spinal impairments, such as limiting plaintiff to sedentary work, the ALJ did so without a medical opinion and seemingly based upon his lay interpretation of the medical evidence.

    As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x

53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted).  Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself."  *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (citation omitted).

    Here, not only did the consultative physicians' opinions fail to account for plaintiff's deteriorating cervical impairment, but none of the subsequent medical evidence in the record addressed associated functional limitations.  The ALJ was therefore left to interpret treatment notes and imaging reports, which the ALJ concluded supported the additional limitations he assessed.  Such a conclusion without the aid of a medical assessment is unsupported by substantial evidence.  *See James T. v. Comm'r of Soc. Sec.*, 2021 WL 4398287, *5 (W.D.N.Y. 2021) ("[b]y failing to obtain a medical opinion and/or functional assessment reflecting plaintiff's ability following his most recent lumbar and ankle surgeries, the ALJ left a gap in the record and relied instead on his own lay opinion to interpret the medical records and testimony"); *Tammy M. v. Comm'r of Soc. Sec.*, 2021 WL 661378, *3 (W.D.N.Y. 2021) ("[i]t was therefore error for the ALJ to rely extensively on [consultative opinion] regarding [p]laintiff's ability to walk, stand, and sit without limitation[] when the 2016 MRI demonstrated that [p]laintiff's condition had worsened[;] [t]his is not the rare case in which the impairments are so minor that the ALJ could render a common sense assessment of [p]laintiff's abilities");

*Costanzo v. Saul*, 2020 WL 3118581, *4 (W.D.N.Y. 2020) ("[b]ecause [the consultative opinion] was the only medical opinion upon which the ALJ relied when determining [p]laintiff's RFC and it was stale, there is now a gap in the record necessitating a remand").

The import of these errors is underscored by the VE's testimony concerning the significance that an individual's reaching ability has on her ability to perform the jobs identified at step five of the sequential analysis.  Specifically, the VE indicated that a change in plaintiff's ability to reach from "frequent[ly]" (which is reflected in the RFC) to "occasional[ly]" would "eliminate all sedentary work." (Tr. 81).  Similarly, the VE testified that plaintiff would be unable to perform sedentary work if she were required to alternate between sitting and standing every ten minutes.  (*Id.*).  Thus, additional limitations resulting from plaintiff's cervical impairments could well affect the disability determination.

In sum, I conclude that the ALJ based at least portions of his RFC finding on stale opinions and on his own lay reading of the record and that the RFC is thus not supported by substantial evidence.  Remand is required for the ALJ to obtain an up-to-date medical assessment of plaintiff's functional capacity in light of her several impairments.[4]

---

[4] This finding is based on my view that plaintiff's cervical impairment significantly deteriorated after Seok and Balderman rendered their opinions and that the ALJ had no up-to-date medical opinion addressing the effect of this deterioration on plaintiff's functional capabilities.  To the extent that plaintiff's staleness argument also relies on the fact that she underwent additional treatment for her lumbar impairment, including additional diagnostic testing, and that she was diagnosed with fibromyalgia, I note that continued treatment alone is insufficient to demonstrate that a medical opinion is stale.  *See Palistrant v. Comm'r of Soc. Sec.*, 2018 WL 4681622, *6 (W.D.N.Y. 2018) ("[j]ust because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale").  Moreover, the mere existence of a new diagnosis does not mandate a finding of a disabling impairment.  *See Wahrmann v. Comm'r of Soc. Sec.*, 2014 WL 4626487, *5 (N.D.N.Y. 2014) ("[t]he presence of an impairment is not in and of itself disabling within the meaning of the [Social Security] Act") (alterations and quotations omitted).  In this case, however, because remand is warranted to evaluate functional limitations associated with plaintiff's subsequent deterioration of her cervical impairment, I urge the ALJ to consider obtaining a current medical opinion addressing any functional restrictions associated with plaintiff's lumbar impairment and fibromyalgia diagnoses.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 21)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 18)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated:  Rochester, New York
           January 7, 2022